IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

1) MELODY CASPER, an individual;
2) ANGELA CLOUD, an individual;
3) CHARLES CLOUD, an individual;
4) MARIE KAY FREEMAN, an individual;
5) MARY KEENER, an individual;
6) CARL LINDESMITH, an individual;
7) CINDY LINDESMITH, an individual;
8) KENNETT MARSHALL, an individual;
9) STACIE MARSHALL, an individual;
10) HOLLY SANDOVAL, an individual;

Plaintiffs,

v.

1) LIBERTY PROPERTY ASSOCIATES, L.L.C., a Virginia limited liability company,

Defendant.

Case No.:

**JURY TRIAL DEMANDED**

## COMPLAINT

**COME NOW** Plaintiffs, Melody Casper, Angela and Charles Cloud, Marie Kay Freeman, Mary Keener, Carl and Cindy Lindesmith, Kennett and Stacie Marshall, and Holly Sandoval ("collectively Plaintiffs"), by and through their attorneys of record, and, for their Complaint against Defendant, Liberty Property Associates, L.L.C. ("Defendant"), allege and state as follows:

### JURISDICTION AND VENUE

1. Plaintiff Melody Casper ("Casper") is domiciled in Delaware County, Oklahoma.

2. Plaintiffs Angela and Charles Cloud, husband and wife ("Clouds"), are domiciled in Delaware County, Oklahoma.

3. Plaintiff Marie Kay Freeman ("Freeman") is domiciled in Nye County, Nevada.

4. Plaintiff Mary Keener ("Keener") is domiciled in Delaware County, Oklahoma.

5. Plaintiffs Carl and Cindy Lindesmith, husband and wife ("Lindesmiths"), are domiciled in Ottawa County, Oklahoma.

6. Plaintiffs Kennett and Stacie Marshall, husband and wife ("Marshalls"), are domiciled in Delaware County, Oklahoma.

7. Plaintiff Holly Sandoval ("Sandoval") is domiciled in Delaware County, Oklahoma.

8. Defendant is a limited liability company formed under the laws of the State of Virginia and, upon information and belief, none of its members are citizens of the State of Oklahoma or the State of Nevada.

9. The acts which give rise to this action occurred in Delaware County, Oklahoma.

10. This Court has original jurisdiction over all claims asserted by Keener, the Marshalls, and the Clouds under 28 U.S.C. § 1332(a)(1). With respect to these claims, there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

11. This Court has supplemental jurisdiction over the claims asserted by Casper, Freeman, Sandoval, and the Lindesmiths under 28 U.S.C. § 1367. With respect to these claims, there is complete diversity of citizenship and they relate to the same case or controversy as the claims over which this Court has original jurisdiction.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to this action occurred in this judicial district.

**FACTUAL BACKGROUND**

13. Plaintiffs incorporate paragraphs 1–12 as if fully set forth herein.

14. From December 2010 through January 2019, Defendant owned certain real estate property located in Delaware County, Oklahoma ("Property").

15. Defendant operated a self-storage company on the Property under the trade name Liberty Storage.

16. Defendant employed Tony and Davis Carlton as on-site managers for Liberty Storage.

17. At all relevant times, Defendant allowed its renters to use their self-storage units to sell their possessions to the public. This practice resulted in significant foot traffic at the Property and widespread knowledge of gate codes that could be used to access the Property.

18. At all relevant times, Defendant allowed truck drivers to sleep on the Property overnight for a small fee.

19. In February 2004, Casper began renting self-storage unit #J317 from Defendant.

20. In November 2015, the Marshalls began renting self-storage unit #I21, #J321 and #G219 from Defendant. During discussions concerning the possibility of renting a self-storage unit at Liberty Storage, Tony Carlton represented to Stacie Marshall that she had been with Liberty Storage for 15 years and, during that time, there had not been a single theft.

21. In December 2015, the Clouds began renting self-storage unit #M10 from Defendant. During discussions concerning the possibility of renting a self-storage unit at Liberty Storage, the on-site managers represented to the Clouds that: (i) every renter receives a unique gate code; and (ii) cameras monitored the Property for security purposes.

22. In March 2017, Freeman began renting self-storage unit #C83 from Defendant.

23. In 2017, the Clouds informed the on-site managers that their gate code did not always work and that, sometimes, any string of numbers could open the gate to the Property.

24. In May 2017, the Lindesmiths began renting self-storage unit #I33 from Defendant.

25. In July 2017, Sandoval began renting self-storage unit #H282 from Defendant.

26. On or about November 3, 2017, Freeman encountered issues with her gate code and noticed that the lock on her self-storage unit was missing.

27. Although no property was missing from her unit, Freeman replaced the lock on her self-storage unit attempted to speak with the on-site managers, but they were unavailable.

28. On or about November 7, 2017, Freeman spoke with the on-site managers. Although they had fixed her gate code, they did not explain why the lock on her unit was missing. Thereafter, Freeman inspected her unit and found that it had been broken into. The lock was gone and several valuable items, which had been stored in that unit, were missing.

29. As a result of the theft, Freeman filled out a police report with the Grove Police Department. The reporting officer requested the on-site managers to produce footage of the security cameras for review but was informed that those cameras were not working.

30. In April 2018, Keener began renting self-storage unit #155, which was climate controlled, from Defendant.

31. Prior to renting her unit, Tony Davis represented to Keener that: (i) there were cameras on the Property; (ii) the cameras were monitored; and (iii) there had never been any "problems" at Liberty Storage.

32. On or about May 7, 2018, Casper inspected her self-storage unit and found that it had been broken into. The lock was gone and several items, which had been stored in that unit, were missing.

33. As a result of the theft, Casper filled out a police report with the Grove Police Department. The reporting officer told Casper that she was the fifth theft reported at Liberty Storage, and the Police Department has been called out to Liberty Storage several times. The reporting officer requested the on-site managers to produce footage of the security cameras for review but was informed that those cameras did not work.

34. On or about June 29, 2018, Brandy Cooper, Stacie Marshalls' brother, and Kennett Marshall visited their self-storage units but was unable to open them with the Marshalls' keys. Dakota Marshall, the Marshalls' son, arrived shortly thereafter. During his visit, he noticed that some of the security cameras were facing upwards and away from, rather than directed towards, the self-storage units.

35. Davis Carlton informed Dakota Marshall that someone had been cutting locks off the self-storage units; that Liberty Storage had been monitoring the self-storage units for missing locks, and if the unit had a lock the on-site managers assumed it was secure.

36. Dakota Marshall inquired why Liberty Storage had not been informing its renters that the locks were being cut on their units, to which Davis Carlton responded that it would be difficult to contact all of the renters and that it was "not [his] problem."

37. Thereafter, Davis Carlton cut the locks on the Marshalls' units. They found that unit #G219 and #I21 had been broken into and several items which had been stored in #G219 were missing, as well as all of their items in #I21.

38. As a result of the theft, the Marshalls filled out a police report with the Grove Police Department. Although the reporting officer was unable to contact an employee of Liberty Storage, he stated that he was unaware of any of the cameras working on the Property.

39. On or about July 30, 2018, Davis Carlton checked the storage buildings and noticed the locks had been cut on the unit belonging to Keener, and that only a few items in were remaining inside.

40. Thereafter, he filled out a police report with the Grove Police Department. Davis Carlton informed the reporting officer that, although there are cameras inside the climate-controlled units, he did not know how to retrieve the video from those security cameras.

41. On or about September 17, 2018, the Lindesmiths discovered that their storage unit had been broken into. The lock was gone and several items, which had been stored in their unit, were missing.

42. Although the on-site managers had known that the lock had been cut on the Lindesmiths' self-storage unit, they did not contact the Grove Police Department, nor did they contact the Lindesmiths. Instead, the on-site managers put one of their locks on the unit, which was subsequently cut by an unknown person.

43. As a result of the theft, the Lindesmiths filled out a police report with the Grove Police Department.

44. On or about January 27, 2019, Sandoval discovered her self-storage unit had been broken into. The lock was gone and several items, which had been stored in her unit, were missing.

45. As a result of the theft, Sandoval filled out a police report with the Grove Police Department.

46. On or about January 27, 2019, the Clouds discovered that their storage unit had been broken into. The lock was gone and all items, which had been stored in their unit, were missing.

47. As a result of the theft, the Clouds filled out a police report with the Grove Police Department.

### FIRST CAUSE OF ACTION
### Negligence (asserted by all Plaintiffs)

48. Plaintiffs incorporate paragraphs 1-47 as if fully set forth herein.

49. Defendant owed a duty of ordinary care to Plaintiffs.

50. Defendant breached that duty by failing to maintain proper security measures on the Property, *e.g.*, functioning gate codes and security cameras, and by failing to inform Plaintiffs that: (i) its security cameras did not work; (ii) it did not monitor its security cameras; (iii) its gate codes did not work; and (iv) numerous thefts had occurred on its storage units immediately before and during the Plaintiffs' rental of self-storage units. Because by May of 2018 Defendant was on notice of multiple break burglaries at the Property, the duty of ordinary care required Defendant to undertake additional security measures to discourage or prevent further burglaries; Defendant failed to institute any additional or sufficient security measure.

51. Defendant's breaches of duty caused damages to Plaintiffs, including mental anguish and physical suffering.

52. The damages suffered by Keener, the Marshalls, and the Clouds, as a result of Defendant's breaches of duty, exceed the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

53. The damages suffered by Casper, Freeman, Sandoval, and the Lindesmiths, as a result of Defendant's breaches of duty, do not exceed the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

54. Plaintiffs' injuries were a foreseeable consequence of Defendant's breaches of duty.

55. Plaintiffs are entitled to the recovery of their attorney's fees and costs.

## SECOND CAUSE OF ACTION
### Actual Fraud (asserted only by the Marshalls, the Clouds, and Keener)

56. The Marshalls, the Clouds, and Keener ("Defrauded Plaintiffs") incorporate paragraphs 1–47 as if fully set forth herein.

57. Defendant made false material misrepresentations to the Defrauded Plaintiffs, including that: (i) the Property had working security cameras; (ii) the cameras were monitored; (iii) there had never been any "problems" at Liberty Storage; and (iv) there had not been a theft at Liberty Storage for more than 15 years.

58. Defendant made these false material representations to the Defrauded Plaintiffs when they knew they were false, or recklessly without knowledge of their truth and as a positive assertion, and with the intent that they be relied upon by the Defrauded Plaintiffs.

59. The Defrauded Plaintiffs relied upon Defendant's false material representations to their detriment, suffering damages in an amount exceeding the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

60. Defendant is liable for Category II punitive damages because it acted intentionally and with malice towards the Defrauded Plaintiffs. Defendant is liable for punitive damages in an amount not to exceed the greatest of:

    a.    $500,000; or

    b.    Twice the amount of actual damages awarded; or

    c.    The increased financial benefit derived by Defendant as a direct result of the conduct causing the injury to the Defrauded Plaintiffs.

## THIRD CAUSE OF ACTION
### (Constructive Fraud asserted by <u>all</u> Plaintiffs)

61. Plaintiffs incorporate paragraphs 1–47 as if fully set forth herein.

62. Defendant owed a duty of full disclosure to Plaintiffs.

63. Defendant breached this duty by failing to inform Plaintiffs that: (i) its security cameras did not work; (ii) it did not monitor the security cameras; (iii) its gate codes did not work; and (iv) numerous thefts had occurred on its storage units immediately before and during the Plaintiffs' rental of the self-storage units.

64. Defendant's omissions were material.

65. Plaintiffs relied on Defendant's material omissions, suffering damages.

66. The damages suffered by Keener, the Marshalls, and the Clouds, as a result of Defendant's breaches of duty, exceed the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

67. The damages suffered by Casper, Freeman, Sandoval, and the Lindesmiths, as a result of Defendant's breaches of duty, do not exceed the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

68. Defendant is liable for Category II punitive damages because it acted intentionally and with malice towards Plaintiffs. Defendant is liable for punitive damages in an amount not to exceed the greatest of:

    a. $500,000; or

    b. Twice the amount of actual damages awarded; or

    c. The increased financial benefit derived by Defendant as a direct result of the conduct causing the injury to Plaintiffs.

## FOURTH CAUSE OF ACTION

**Oklahoma Consumer Protection Act Claims (asserted by <u>all</u> Plaintiffs)**

69.     Plaintiffs incorporate paragraphs 1–47 as if fully set forth herein.

70.     Defendant committed unfair and/or deceptive trade practices as defined by Oklahoma law.

71.     The unfair and/or deceptive trade practices committed by Defendant occurred in the course of its business.

72.     Plaintiffs, as consumers, suffered damages because of the unfair and/or deceptive trade practices committed by Defendant.

73.     The damages suffered by Keener, the Marshalls, and the Clouds, as a result of Defendant's breaches of duty, exceed the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

74.     The damages suffered by Casper, Freeman, Sandoval, and the Lindesmiths, as a result of Defendant's breaches of duty, do not exceed the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

75.     Defendant is liable for Category II punitive damages because it acted intentionally and with malice towards Plaintiffs. Defendant is liable for punitive damages in an amount not to exceed the greatest of:

    a.     $500,000; or

    b.     Twice the amount of actual damages awarded; or

    c.     The increased financial benefit derived by Defendant as a direct result of the conduct causing the injury to Plaintiffs.

76.     Plaintiffs are entitled to the recovery of their attorney's fees and costs.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, Melody Casper, Angela Cloud, Charles Scott Ray Cloud, Marie Kay Freeman, Mary Keener, Carl Lindesmith, Cindy Lindesmith, Kennett Marshall, Stacie Marshall, and Holly Sandoval, respectfully request this Court enter judgment in their favor and against Defendant, Liberty Property Associates, L.L.C., award Plaintiffs actual damages in an amount exceeding the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, award Plaintiffs punitive damages, their attorney's fees and costs, and grant any additional relief this Court deems just and equitable.

Respectfully Submitted,

**JONES, GOTCHER & BOGAN, P.C.**

By: /s Patrick G. Colvin
   C. Michael Copeland, OBA #13261
   Patrick G. Colvin, OBA #31519
   Morgan T. Smith, OBA#33774
   3800 First Place Tower
   15 East Fifth Street
   Tulsa, OK 74103-4309
   (918) 581-8200
   (918) 583-1189 *facsimile*
   **ATTORNEYS FOR PLAINTIFFS**